IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CREATIVE MONTESSORI LEARNING CENTER, | ) ) ) | |
| Plaintiff, | ) | No.  09 C 3963 |
| v. | ) ) | Judge Robert W. Gettleman |
| ASHFORD GEAR, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Creative Montessori Learning Center has brought a putative class action

complaint against defendant Ashford Gear, LLC alleging violations of the Telephone Consumer

Protection Act ("TCPA"), 42 U.S.C. § 227 and conversion.  Both counts are premised on the

allegation that defendant sent, or authorized the sending of, an unsolicited facsimile

advertisement to plaintiff.

Plaintiff has moved under Fed.R.Civ.P 23(b)(3) to certify a class defined as:  "All

persons who were sent one or more faxes in June 2006 regarding the 'Rollee Pollee' self-

contained napping station, offering 'Order 20 Rollee Pollees by June 20, 2006 and Get 6

FREE!,' and identifying (718) 360-0971 as the number to call to stop receiving faxes."

Defendant opposes class certification.  For the reasons described below, the court grants

plaintiff's motion.

## BACKGROUND

Defendant sells a "blanket, pillow, sleeping mat combination" called the "Rollee Pollee."

In the summer of 2006, defendant hired a fax broadcasting company called Back 2 Business

("B2B") to conduct a fax advertising campaign on defendant's behalf. Defendant provided B2B with an advertisement to be faxed to potential customers.

Plaintiff's expert, Robert Biggerstaff, is a retired engineer with experience in the design and evaluation of computer databases and networks, including computer-based facsimile systems. According to Mr. Biggerstaff, on both June 7, 2006 and June 14-15, 2006, B2B faxed a single advertisement a total of 31,510 times for defendant. 22,222 were successfully delivered to 14,574 different fax machines.

Plaintiff alleges that defendant sent two unsolicited fax advertisements to plaintiff's fax machine on June 7, 2006 and June 14-15, 2006.

## DISCUSSION

### A. Legal Standard

#### 1. Rule 23

Class action suits are governed by Fed.R.Civ.P. 23. A two-step analysis is required to determine if class certification is appropriate. First, plaintiff must satisfy all four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir.1993). Second, the action must also satisfy one of the conditions of Rule 23(b). Joncek v. Local 714 Int'l Teamsters Health and Welfare Fund, 1999 WL 755051, *2 (N.D.Ill. Sept.3, 1999). Here, plaintiff seeks class certification under Rule 23(b)(3).

Under Rule 23(b)(3), the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy." The court should not consider the merits of the underlying claim when

evaluating whether a class should be certified. <u>Eisen v. Carlisle and Jacquelin</u>, 417 U.S. 156,

166 (1974). The court may, however, "probe behind the pleadings." <u>General Telephone Co. of

Southwest v. Falcon</u>, 457 U.S. 147, 160 (1982); <u>see</u> <u>also</u> <u>Szabo v. Bridgeport Machines, Inc.</u>, 249

F.3d 672, 676 (7th Cir.2001).

### 2. TCPA

The TCPA prohibits the use of "any telephone facsimile machine, computer or other

device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. §

227(b)(1)(C). It also creates a private right of action whereby the recipient of an unsolicited fax

may bring an action to "recover for actual monetary loss from such a violation, or to receive

$500 in damages for each such violation, whichever is greater…" 47 U.S.C. § 227(b)(3)(B).

Knowing or willful violations may entitle the plaintiff to treble damages. 47 U.S.C. §

227(b)(3)(C).

To prevail on a claim under the TCPA, plaintiff must show that defendant: "(1) used a

telephone facsimile machine, computer or other device to send a facsimile; (2) the facsimile was

unsolicited; and (3) the facsimile constituted an advertisement." <u>Hinman v. M and M Rental

Center, Inc.</u>, 545 F. Supp. 2d 802, 805 (N.D.Ill.2008).

### B. Application

#### 1. Numerosity

Rule 23(a)(1) requires a plaintiff to demonstrate that the members of the prospective

class are so numerous as to make joinder impracticable. <u>See</u> <u>e.g.</u>, <u>Parker v. Risk Management

Alternatives, Inc.</u>, 206 F.R.D. 211, 212 (N.D.Ill.2002). "Although there is no 'bright line' test

for numerosity, a class of forty is generally sufficient." McCabe v. Crawford & Co., 210 F.R.D. 631, 643 (N.D.Ill.2002) (internal citations omitted). As noted, plaintiff alleges that B2B faxed a single advertisement 31,500 times for defendant. 22,222 were successfully delivered to 14,574 different fax numbers.

The court finds, and defendant does not contest, that a class consisting of thousands of recipients of defendant's fax advertisement is sufficiently numerous that joinder of all members is impracticable.

### 2. Commonality

Rule 23(a) (2) "requires the presence of questions of law or fact common to the class." The rule does not mandate absolute commonality; a common nucleus of operative fact is usually enough to satisfy the requirement. Keele v. Wexler, 149 F.3d 589, 594 (7th Cir.1998). Here, plaintiff contends that defendant engaged in "standardized conduct" by faxing a form advertisement to a target list created and provided by B2B. See Keele, 149 F.3d at 594. Defendant admits to hiring B2B to send the faxes.

Plaintiff raises several common questions of law and fact: (1) whether defendant's fax is an advertisement; (2) whether defendant violated the TCPA by faxing that advertisement without prior express invitation or permission to do so and without an established business relationship with the class members; (3) whether plaintiff and the other class members are entitled to statutory damages; (4) whether defendant sent the advertising faxes knowingly or willfully and, if so, whether the court should treble the statutory damages.

The court finds, and defendant does not contest, that the Rule 23(a)(2) commonality requirement is satisfied here.

4

### 3. Typicality

Typicality under Rule 23(a)(3) is satisfied if a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir.1983). Typicality focuses "on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." Id. Because commonality and typicality are closely related, a finding of one often results in a finding of the other. Id.

"Where the named plaintiff's claim may fail on grounds unique to the named plaintiff…the typicality requirement for class certification may not be satisfied." Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 2002 WL 548704 at *3 (N.D.Ill. April 8, 2002); see also Koos v. First Nat. Bank of Peoria, 496 F.2d 1162, 1164-65 (7th Cir. 1974). The TCPA applies only to "unsolicited" fax advertisements. Because defendant claims to have "obtained the facsimile number and consent of Creative Montessori" before transmitting the fax, defendant asserts that plaintiff's claim may fail on unique grounds and is therefore atypical of the class.

The record, however, does not support defendant's characterization of the facts. It is clear that defendant spoke with plaintiff on the phone in an effort to solicit business. But while defendant might have asked for plaintiff's fax number in the process, nothing in the record suggests that plaintiff actually disclosed that number.

Although a named plaintiff is "not a proper class representative" where a defense unique to that plaintiff is likely to be a major focus of the litigation, that defense must at least be

5

"arguable." <u>Koos</u>, 496 F.2d at 1164. Defendant's assertions here are insufficient to render plaintiff's claim atypical of the class.

### 4. Adequacy of Representation

#### (a) Plaintiff

To be an adequate class representative under Rule 23(a)(4), plaintiff must have a "sufficient interest in the outcome to ensure vigorous advocacy." <u>Chapman v. Worldwide Asset Management, L.L.C.</u>, 2005 WL 2171168, *4 (N.D.Ill. Aug.30, 2005). The class representative cannot have "antagonistic or conflicting claims with other members of the class." <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992).

Where a plaintiff's credibility has been severely undermined, the adequacy of the plaintiff's representation of the class may be called into question. <u>See</u> <u>e.g.</u> <u>Kaplan v. Pomerantz</u>, 132 F.R.D. 504, 510 (N.D.Ill. 1990); <u>see also</u> <u>CE Design Limited v. King Architectural Metals, Inc.</u>, 637 F.3d 721, 728 (7th Cir. 2011). Nevertheless, "[s]erious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class." <u>CE Design Limited</u>, 637 F. 3d at 728.

Defendant asserts that plaintiff "falsely answered interrogatories and document requests seeking information central to its TCPA claim and going to the existence of an established business relationship ('EBR')".[1] Defendant notes alleged inconsistencies in the factual record as

---

[1]The TCPA does not prohibit the transmission of fax advertisements to recipients with whom the sender has an established business relationship ("EBR"). An EBR is defined as a "voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application,

(continued...)

to whether plaintiff belonged to "any professional associations," whether plaintiff entered into various purchase agreements with other vendors, whether plaintiff possessed any records of such purchase agreements, and whether plaintiff was listed in the Yellow Pages. None of these alleged inconsistencies, however, have any bearing on whether an EBR existed between the parties. See 47 C.F.R. § 64.1200(f)(5).

The court recognizes, for example, that the identities of a recipient's "affiliates" are relevant to the existence of an EBR in the context of "telephone solicitations." But they are not relevant in the context of fax advertisements. Compare 47 C.F.R. § 64.1200(f)(4)(ii) with 47 C.F.R. § 64.1200(f)(5). The court also recognizes that a recipient's listing in a public directory, while not relevant to whether an EBR exists, is relevant to whether a TCPA violation has occurred if an EBR is found to exist. See 47 C.F.R. § 64.1200(a)(3)(ii)(B).

In any event, all of the alleged inconsistencies were subsequently corrected in plaintiff's deposition in February 2010, and none relate to the existence of a "voluntary two-way communication" between the parties. See 47 C.F.R. § 64.1200(f)(5). Defendant's challenges to plaintiff's credibility are not sufficiently serious to undermine plaintiff's adequacy as class representative.

### (b) Plaintiff's Counsel

Under Rule 24(a)(4), "plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation." Susman v. Lincoln American Corp., 561 F.2d 86, 90

---

[1](...continued)
purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5); see also 47 U.S.C. § 227(b)(1)(C)(i)-(iii).

(7th Cir. 1977). Class status has been denied to plaintiffs whose attorneys have engaged in misconduct related to the class action. See Halverson v. Convenient Food Mart, Inc., 458 F.2d 927, 931-32 (7th Cir. 1972); Stavrides v. Mellon Nat. Bank & Trust Co., 60 F.R.D. 634, 636-37 (W.D.Pa. 1973). Nevertheless, "[o]nly the most egregious misconduct on the part of [a plaintiff's] lawyer could ever arguably justify denial of class status. The ordinary remedy is disciplinary action against the lawyer and remedial notice to class members." Halverson, 458 F.2d at 932.

### (i) A "Broken Promise"

Defendant asserts that plaintiff's counsel, attorneys at Anderson and Wanca, are not adequate to represent the class because counsel initiated this lawsuit "through soliciting the named plaintiff with information it obtained through exploiting the discovery process and breaching a promise of confidentiality it made to an unrepresented third party." Plaintiff's counsel obtained an electronic database from B2B that contained contact information for intended targets of fax advertisements in a similar previous lawsuit. CE Design Ltd. v. Cy's Crabhouse North, Inc., 2010 WL 2365162 at *5 (N.D.Ill. June 11, 2010). The database included the instant plaintiff's contact information.

In an email to B2B initially requesting disclosure of this database, plaintiff's counsel indicated that a protective order would prevent counsel from disclosing it to third parties. Although the CE Design court subsequently found that the database was not properly subject to the protective order, 2010 WL 3327876 at *3 (N.D.Ill., August 23, 2010), defendant asserts that counsel's use of the database to initiate this and "40 [other] lawsuits against B2B's former

customers" constitutes a "broken promise." This, defendant asserts, calls counsel's integrity into question and renders them inadequate to represent the class plaintiff.

Plaintiff asserts that, because the protective order was vacated, counsel's use of the information B2B produced was not improper. Defendant argues that whether a protective order was in place is irrelevant, citing <u>Salmeron v. Enter. Recovery Sys., Inc.</u>, 579 F.3d 787, 796 (7th Cir. 2009). <u>Salmeron</u>, however, is distinguishable. In <u>Salmeron</u>, the district court dismissed the case <u>sua sponte</u> after a "virtually unbroken pattern of dilatory and irresponsible conduct" on the part of the plaintiff's attorney. 579 F.3d at 789. After being persuaded to reinstate the case, the district court issued a "final warning" to the attorney that future misconduct would not be tolerated. <u>Id</u>. Just one month later, however, the attorney violated the parties' "attorney's eyes only" confidentiality agreement and admitted to leaking several confidential documents to a reporter. <u>Id</u>. at 792.

When questioned about the leak, the wayward attorney argued that no protective order was in place. <u>Id</u>. For several months, however, the parties and the court had been waiting for the attorney to respond to the defendant's request that he "add his changes" to a proposed joint motion for a protective order. <u>Id</u>. at 791-92. Accordingly, the court found that "the lack of a protective order was unquestionably due to [the attorney's] failure to provide a response as he had promised." <u>Id</u>. at 792. Having already issued a final warning prompted by the attorney's "extended pattern of noncompliance," the court dismissed the suit with prejudice. <u>Id</u>. at 791-92.

With respect to the "broken promise" in the instant case, the court is inclined to agree with the <u>CE Design</u> court that counsel's conduct was not "entirely on the up and up." 2010 WL 2365162 at *6. The email plaintiff's counsel sent to B2B clearly seemed designed to persuade

B2B to turn over the database on the assurance that it would be treated as confidential. Id. As noted, however, the protective order was ultimately vacated, and although counsel's conduct was unseemly, it does not reach the level of the misconduct in Salmeron.

### (ii) Solicitation

The nature of counsel's initial contact with plaintiff, however, is another matter. Though insufficiently briefed by both parties, the court finds two open questions of fact regarding counsel's conduct to be particularly troubling.

First, the precise sequence of events surrounding counsel's solicitation of plaintiff's employment requires further inquiry. Rule 7.3(a) of the American Bar Association ("ABA") Model Rules of Professional Conduct[2] states in relevant part: "A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain…" Although the record is unclear, there are several statements in plaintiff's February 25, 2010, deposition that suggest counsel might have initially solicited employment from plaintiff by telephone. If that is indeed the case, counsel likely violated Rule 7.3(a).

Second, the solicitation letter that counsel sent to plaintiff may also run afoul of the Model Rules. Rule 7.3(c) states in relevant part:

> Every written, recorded or electronic communication from a lawyer soliciting professional employment from a prospective client known to be in need of legal services in a particular matter shall include the words "Advertising Material" on the outside envelope, if any, and at the beginning and ending of any recorded or electronic communication…

---

[2]The ABA Model Rules of Professional Conduct are incorporated into this District's Local Rules under LR83.50.

Although the words "Advertising Material" appear at the bottom of counsel's solicitation letter, the envelope in which the letter was sent is not included in the record.

Further, Comment 5 to Rule 7.3 notes that "even permitted forms of solicitation can be abused. Thus, any solicitation which contains information which is false or misleading within the meaning of Rule 7.1…is prohibited." Under Rule 7.1, "[a] communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading."

Counsel's solicitation letter to plaintiff, dated March 19, 2009, states that counsel's law firm "litigates class action lawsuits against companies which send junk faxes." The letter then states, "[d]uring our investigation, we have determined that you are likely to be a member of the class." It is not clear to what "class" counsel is referring. The putative class at issue in the instant case obviously has not yet been certified, and certainly had not been certified on March 19, 2009. Yet counsel's letter appears to represent that a class already had been certified, that plaintiff was likely a member of that class, and that plaintiff stood to receive up to $1500 per junk fax if the lawsuit was successful. Plaintiff's briefs do not address this issue, and plaintiff is invited to respond. On these facts, however, counsel's solicitation letter appears to "contain a material misrepresentation of fact, or omit a fact necessary to make the statement considered as a whole not materially misleading."

At least one court in this district has found that a violation of the Model Rules will disqualify class counsel from representing the class. Wagner v. Lehman Bros., 646 F. Supp. 643, 661 (N.D.Ill. 1986). The record before the court in the instant case is insufficient to determine whether plaintiff's counsel is in fact in violation of Rule 7.1 or 7.3. The court will

thus conduct further inquiry into the precise sequence of events surrounding counsel's solicitation of plaintiff, as well as counsel's written correspondence with plaintiff. If the court finds counsel to have violated Rule 7.1 or 7.3, the court will consider the appropriate consequences of any such violation.

As noted, the Seventh Circuit has held that "[o]nly the most egregious misconduct on the part of [a plaintiff's] lawyer could ever arguably justify denial of class status." <u>Halverson</u>, 458 F.2d at 932. Even if counsel's conduct is found to be in violation of Rule 7.1 or 7.3, at this stage of the proceeding the court doubts that it qualifies as the "most egregious misconduct." Counsel has considerable experience litigating class actions generally and TCPA cases in particular. Defendant does not question counsel's competence, and the court will assume for purposes of class certification that counsel will "fairly and adequately represent the interests of the class." <u>See</u> Fed.R.Civ.P 23(g). Further, there are "procedures in place to thwart such conduct other than denying class status to claimants who have alleged actionable claims." <u>Endo v. Albertine</u>, 147 F.R.D. 164, 170-71 (N.D.Ill. 1993). If necessary, the "ordinary remedy" of "disciplinary action against the lawyer" will suffice. <u>See</u> <u>Halverson</u>, 458 F.2d at 932. In addition, as mentioned above, the court could consider disqualifying the attorneys at Anderson and Wanca without decertifying the class.

### 5. Predominance and Superiority

#### (a) Predominance

Under the predominance requirement of Rule 23(b)(3), questions of law or fact common to the class must "predominate over any questions affecting only individual members."

12

Defendant asserts that two individual questions will predominate over any common questions of fact. First, "each proposed class member must prove that the subject faxes were 'unsolicited.'"

Defendant cites to the Fifth Circuit's opinion in <u>Gene & Gene, LLC v. Biopay, LLC</u>, 541 F.3d 318, 321 (5th Cir. 2008), another class action brought under the TCPA. In <u>Gene & Gene</u>, the court held that the predominance requirement was not satisfied because the issue of consent could be decided only on an individualized basis. <u>Id</u>. at 329.

The Fifth Circuit first made clear, however, that violations of the TCPA "are <u>not</u> per se unsuitable for class resolution." <u>Id</u>. at 328 (emphasis added). Indeed, the court noted that, where a defendant obtains "all of the fax recipients' fax numbers from a single purveyor of such information," the question of consent does not require "individual evidence." <u>Id</u>. at 327 (citing <u>Kavu v. Omnipak Corp.</u>, 246 F.R.D. 642, 645 (W.D.Wash.2007)).

In <u>Hinman</u>, another class action brought under the TCPA, the court rejected the very argument defendant makes here. 545 F.Supp.2d at 807. The question of consent may "rightly be understood as a common question [where fax broadcasts were] transmitted <u>en masse</u> to recipients identified on a singular 'leads' list obtained from a singular source." <u>Id</u>. (citing <u>Kavu</u>, 246 F.R.D. at 646 (consent is a common question where defendant obtained recipients' fax numbers from a particular database)).

Indeed, the <u>Hinman</u> court cited with approval to <u>Travel 100 Group v. Empire Cooler Service</u>, 2004 WL 3105679 (Ill.Cir. 2004), where the defendant "engaged a third party to send more than 3,000 facsimiles to targeted businesses." <u>Hinman</u>, 545 F. Supp. 2d at 806. Under such circumstances, "[t]he manner in which the defendant identified [the] recipients will not require individualized scrutiny." <u>Id</u>.

Unlike the defendant in <u>Gene & Gene</u>, the instant defendant did not "call fax numbers from a variety of sources over a period of time, such that class-wide proof of consent is not possible." 541 F.3d at 329. Rather, as in <u>Travel 100 Group</u>, the defendant hired a third party to provide all of the fax recipients' fax numbers. "The possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification." <u>Hinman</u>, 545 F. Supp. 2d at 807. The court finds that the same reasoning applies in this case, and the Rule 23(b)(3) predominance requirement is satisfied.

The second individual question of fact that defendant asserts will predominate over any common questions is whether an EBR exists between defendant and any class member. As discussed below, refining the class definition so as to exclude members with an EBR with defendant will resolve this issue. <u>See</u> <u>Hinman</u>, 545 F. Supp. 2d at 807.

### (b) Superiority

Under the superiority requirement of Rule 23(b)(3), a class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Defendant asserts that this requirement is not met for two reasons. First, defendant asserts that small claims court is superior to the class action as a mechanism to litigate a TCPA claim. And second, defendant asserts that class actions are "inconsistent with the legislative intent of the TCPA, which is to provide the individual consumer with a personal remedy 'to address the minor nuisance' of unsolicited telephone or facsimile machine solicitations." The court disagrees.

The three cases that defendant cites in support of this assertion essentially found that the TCPA's statutory remedy is "designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf." <u>Forman v. Data Transfer, Inc.</u>, 164 F.R.D. 400, 404 (E.D.Pa.

14

1995); see also CE Design, Ltd. v. Mortgage Exchange, Inc., 375 Ill.App.3d 379, 381 (Ill.App. 2

Dist. 2007); Kim v. Sussman, 2004 WL 3135348 at *2 (Ill.Cir. 2004). A class action would thus

be "inconsistent with the specific and personal remedy provided by Congress to address the

minor nuisance of unsolicited facsimile advertisements." Forman, 164 F.R.D. at 405. This

argument was rejected by the Seventh Circuit in a similar context in Murray v. GMAC Mortg.

Corp., 434 F.3d 948, 953 (7th Cir. 2006).

Murray was a class action brought under the Fair Credit Reporting Act. The district court

found that a class action was "not superior to other available methods for the fair and efficient

adjudication of the controversy" and denied certification. Murray v. GMAC Mortg. Corp., 2005

WL 3019412 (N.D.Ill. 2005) (citing Fed.R.Civ.P 23(b)(3)). If plaintiffs were to prevail at trial,

the court held, "GMAC would face a potential liability in the billions of dollars for purely

technical violations of the FCRA ... Rule 23 is not intended to encourage such abuses of the class

action mechanism." Id.

The Seventh Circuit vacated and remanded the district court's decision, however, noting

that, while "many laws authorizing statutory damages also limit the aggregate award to any

class…[t]he Fair Credit Reporting Act is in the cap-free group."[3] Murray, 434 F.3d at 953. The

Seventh Circuit also noted:

> The district judge sought to curtail the aggregate damages for violations he
> deemed trivial. Yet it is not appropriate to use procedural devices to undermine
> laws of which a judge disapproves. Maybe suits such as this will lead Congress
> to amend the Fair Credit Reporting Act; maybe not. While a statute remains on
> the books, however, it must be enforced rather than subverted. Id. at 953-54
> (internal citations omitted).

---

[3]The TCPA is also in the "cap-free group." See 47 U.S.C. § 227.

At least one court in this district has found that the reasoning in <u>Murray</u> "forcefully rejects" the very argument set forth by the instant defendant.  <u>See</u> <u>Green v. Service Master On Location Services Corp.</u>, 2009 WL 1810769 at *3 (N.D.Ill 2009) (holding that the Seventh Circuit's decision in <u>Murray</u> "squarely rejected" defendant's argument that "Congress did not intend that the TCPA serve as a vehicle to bring class complaints and that the available $500 to $1500 penalty is…sufficient to encourage individual plaintiffs to bring suit in small claims courts.").

"Congress did not make a clear expression of an intent to preclude application of Fed.R.Civ.P 23 to the TCPA, and the Court will not read one into the statute."[4]  <u>Id</u>.

As in <u>Murray</u>, that class-wide damages may be substantial under the TCPA is not due to inappropriate use of the class action mechanism.  Damages may be substantial because Congress

---

[4]Defendant cites to the Congressional Record in support of the assertion that Congress did not regard class actions as the superior method to adjudicate TCPA claims.  137 Cong. Rec. S16204 (daily ed., Nov. 7, 1991).  Defendant appears to have misread the Record.  The Congressional Record indicates that Congress wished to ensure that small claims courts were available for TCPA actions "to make it as easy as possible for consumers to bring such actions." 137 Cong. Rec. S16204 (daily ed., Nov. 7, 1991).  Nevertheless, "constitutional restraints" prevented Congress from dictating such a requirement to the states.  <u>Id</u>.

There is nothing in the Congressional Record to which defendant cites, however, that suggests Congress wished to "limit" TCPA actions to small claims courts only.  And there is nothing in the cited Record that suggests Congress necessarily preferred small claims courts over class actions.  Indeed, class actions are not discussed anywhere in the cited Record.  137 Cong. Rec. S16204 (daily ed., Nov. 7, 1991).  It is arguable, however, that Congress's interest in making it "easier for consumers to obtain damages from those who violate this bill," actually suggests that adjudicating TCPA claims as class actions is in fact <u>consistent</u> with Congressional intent.  <u>See id</u>.

decided to authorize awards as high as $1500 per violation, and some fax broadcasters transmit fax advertisements by the thousands.[5]  Cf. Murray, 434 F.3d at 953.

Numerous classes have been certified in similar TCPA suits in this and other jurisdictions.  See e.g., Green, 2009 WL 1810769; Holtzman v. Turza, 2009 WL 3334909 (N.D.Ill. 2009); Hinman, 545 F.Supp.2d at 802; Kavu, Inc., 246 F.R.D. at 642.  As noted above, violations of the TCPA "are not per se unsuitable for class resolution."  Gene & Gene, 541 F.3d at 328.

The court finds that defendant's arguments here are ultimately unavailing.  The superiority requirement of Rule 23(b)(3) is satisfied.

### 6. Class Definition

The Hinman court noted:

> Defendants…argue that a class defined to include only individuals who did not consent improperly circumvents the commonality and typicality requirements and reaches too far into the merits of the case.  It seems to me, however, that by certifying a class of individuals who received unsolicited faxes, I am merely setting the boundaries of the class, not resolving the substantive issues. 545 F. Supp. 2d at 807 (internal citations omitted).

The court finds this reasoning persuasive.  The class as currently defined includes fax recipients that have an EBR with defendant and recipients that consented to the receipt of the

---

[5]The court acknowledges, as did the Seventh Circuit in Murray, that it is certainly conceivable that  a given award may be unconstitutionally excessive.  Such an award may be reduced, "but constitutional limits are best applied after a class has been certified."  Murray, 434 F.3d at 954.  "Reducing recoveries by forcing everyone to litigate independently – so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims – has little to recommend it."  Id.

17

advertisement. These recipients have no standing under the TCPA and must be excluded from the class.

<u>**CONCLUSION**</u>

For the reasons stated above, the court finds that plaintiff has satisfied the class certification requirements of Fed.R.Civ.P. 23(a) and 23(b)(3), and plaintiff's motion for class certification is granted. The class is defined as:

> All persons having no established business relationship with Ashford Gear, LLC who were sent one or more unsolicited faxes in June 2006 regarding the "Rollee Pollee" self-contained napping station, offering "Order 30 Rollee Pollees by June 30, 2006 and Get 6 FREE!," and identifying (718) 360-0971 as the number to call to stop receiving faxes.

At the August 2, 2011 status hearing, counsel for plaintiff is directed to address the matters raised in section B(4)(b)(ii) above and to tender a draft notice to the class.

**ENTER:**      **July 27, 2011**

**Robert W. Gettleman**
**United States District Judge**

18